Thank you, Your Honor. Aaron Hartman here on behalf of the Appellants, Outsource Services Management, LLC, and BF Negev, LLC. The District Court's summary judgment order should be reversed. The remand order should require the District Court to enter a liability judgment in favor of OSM and direct a trial on the issue of damages. Alternatively, and at bare minimum, the remand order should reverse the liability finding in LNV's favor. And the attorney's fee award favoring LNV should also be reversed because, under either scenario that I just described, LNV would no longer be considered the prevailing party in this proceeding. The fundamental reason that OSM is entitled to the relief requested is, even a powerful statutory scheme like FIREA does not allow parties such as LNV to reap the benefits of a participation loan agreement that it refused to fund. Those benefits arise from an unrepudiated loan participation agreement. And the key legal question for the Court today is whether the FDIC's and later LNV's successor breach of that unrepudiated pre-receivership contract should be subject to FIREA's administrative claims procedures. Why wouldn't they be? It seems the statute is pretty clear that if something goes in the receivership under the FDIC, the claims processing requirements are mandatory. Under the Ninth Circuit's holdings in Sharp and Bank of Manhattan, and under the District of Columbia Circuit's holding in Waterview Management, the FDIC is not permitted to simply breach an unrepudiated contract and then hide behind FIREA's claims procedures. It's not hiding if you get to go there and argue. You do get to go there and argue that's true, but those repudiation procedures I respectfully submit exist for a reason, and this case is most similar to the facts of Sharp because OSM, like the plaintiff in Sharp, performed its end of the bargain before and during the receivership by making principal advances to the borrower. The FDIC and later LNV did not fund its pro rata share, and that is a breach of contract. The Sharp decision clearly concludes that the FDIC cannot simply breach the contract. It must repudiate or pay damages. And the Sharp decision also concludes that the breach of contract is not the kind of quote, claim that is subject to the claims procedures outlined in Section 1821D. And as an assignee of all right, title, and interest in the participation agreement, LNV effectively steps into the shoes of the FDIC and is also liable. And Judge? Was there anything that precluded a filing of a claim through the administrative procedure? Precluded? No. But the unique facts of this case provide that any claim was not something that first existed at the time the receivership began. At the time the receivership began, the owner of this participation interest had fully funded their portion of the loan. During the period of the receivership, and the receivership lasted, at least as to this asset, for just over a year, any claims that arose were successive. The reason for that was this was a participation loan contract. It was about half funded at the time the receivership began. It was fully funded by the end of the receivership, and the underlying borrower, which didn't have a contractual relationship, by the way, with the failed bank. The contractual relationship was only between the failed bank and OSM as the servicer for the loan. That loan was funded over a successive number of draw requests that began as early as August of 2008 and then continued through July of 2009. And so what would have been required is for a quote, claim to have been filed multiple times during the course of the receivership. It is clear from the record that OSM, as the lead lender, communicated frequently with the FDIC representatives about this particular loan and what they were told was that this would be a contract that was either repudiated or not. The record doesn't have any discussion about whether they were required to somehow file a quote, claim. And that's why we would also submit that the rule of Homeland Stores, which the Tenth Circuit endorsed as it relates to the post-circuit or post-receivership, post the receiver's conduct after the receivership begins, should apply here. In that case, the quote, claim, if any existed, was contingent and uncertain, just as it was in this case. Again, because the quote, claim, if it was such a quote, claim for the purposes of FIREA, was one of successive performances by the lead lender in this participation loan. So you're saying that the successive nature of it somehow is at least a barrier to the filing of a claim? I'm not sure I understand what your point is there. I wouldn't say it was a barrier. I wouldn't say that it was something that prevented the lead lender from filing a claim. But the way the claims procedures work is, at the beginning of the receivership, a claims bar date gets set. And the reason that claims bar date exists is so that creditors of the financial institution, at the time the receivership begins, have a limited amount of time to file their claim, and the FDIC can in turn make decisions about which claims to pay, and if so, how much. They can quickly administer this failed bank, and it's a short time period. It's only 90 days. It just so happened that this asset remained the subject of a receivership well past the claims bar date. Was there anything, even though it may have been beyond the time period, you still could have filed, couldn't you? Claims are potentially available, but our position, Your Honor, is that OSM, as the servicer of this loan, who performed this loan, was not required to file a claim within the meaning of FIREA. And the holdings in Sharp Bank of Manhattan and Waterview Management support that theory. And even if they could have filed a quote claim, the holding in the Homeland Stores case out of the Tenth Circuit provides that a receiver's conduct after the receivership begins is not subject to the claims procedures under FIREA. So in other words, there was nothing preventing us from filing a claim. The position is we didn't have to. How do we get out from under the any act or omission of the receiver language of the statute? How do you sort of square that with what your position here is today? The authorities that I've just cited and relied on, Sharp Bank of Manhattan, Waterview Management, and Homeland Stores, that language is broad, I grant you, Judge, but the courts have held that it doesn't apply to each and every scenario under the sun. There are circumstances under which a claim does not need to be filed and the exhaustion requirement does not apply. The cases I've just cited support the notion that in this case, it was not required. And even if, Your Honors, the court was to apply that kind of overarching blanket rule that the district court embraced and that L&V urges you to adopt here today, that rule should apply equally to L&V. If L&V wants to receive benefits from this participation agreement, L&V should also be required to shoulder its share of the burdens. The participant, whether you're talking about the Colombian Bank and Trust, the FDIC, or its fair share, its full 4% or $6 million of the participation interest. Having failed to fund, the participant is still in breach of its contract and the participant is not entitled to any benefits. The district court summary judgment order awarded money damages to L&V as a result of breach. The other participants, called the contributing participants in the party's briefing, had to shoulder that burden when the Colombian Bank and Trust failed, when the FDIC refused to or did not fund Colombians' share of the advances to the borrower, and when L&V continued that refusal to fund advances to the borrower. Having failed to contribute, L&V should be entitled to nothing, and that's true regardless of whether OSM should have submitted a, quote, claim to the FDIC during the course of the receivership. The courts have held that affirmative defenses, such as a prior breach of contract, are not subject to the administrative exhaustion requirements under FERIA, and under just ordinary contract principles, a party who is in breach should not receive the benefits of the agreement. Applying that blanket rule, also, I believe, under the facts of this case, where you have a requirement of successive performances, where a lead lender is required under the lead lender's agreements with the borrower to advance funds to the borrower, and then underlying participants who actually fund the loan and don't have a contractual relationship with the borrower, but instead have a contractual relationship with that lead lender, requiring a claims procedure could effectively immunize the FDIC for decisions it makes about pre-receivership contracts that require just those kinds of successive performances during the course of the receivership. And it's important because a different in-blanket rule, as applied to the facts of this case, would provide a significant and really unacceptable disincentive for parties to perform their contracts during the receivership. I believe that the FDIC needs parties to the failed banks' contracts to perform successively during the course of that receivership. If the FDIC is allowed, per court rulings, to simply hide behind those administrative procedures and either deny the claim and it gets to make its own decisions about what to do, or eventually potentially pay pennies on the dollar for that claim, the counterparty of the contract has less incentive to uphold its end of the bargain, too. What is that counterparty to do when it has no assurances of payment during the receivership? You're saying there should be incentive to, by allowing this, an affirmative defense, you're encouraging the, under the, well, in this case, L&V, to continue to honor any agreement, otherwise they sort of can hide under the FDIC's omissions and then use affirmatively the failure to file a claim? Yes, and as an affirmative claim for someone in the position of OSM as well. OSM had the contractual relationship with the failed bank, and OSM should be provided proper incentive to continue to perform. Now, it had a good business reason to keep funding this loan. It was contractually obligated to do so. And it was thankfully able to find some assistance through other contributing participants who had to fund in Columbian's absence. Say, on this matter of the affirmative defense, I had a question about the reply brief, and then the district court didn't mention it at all, despite these lengthy orders. So, I'm wondering whether this was properly raised. Properly raised in what sense, Judge? In the sense that, whether it was argued to the district court in response to the motion for summary judgment. We argued the issue of prior breach. I don't recall that we specifically labeled it as a quote, affirmative defense, but we certainly said L&V is not entitled to any recovery in this case because it breached the contract first. Well, but that was your counterclaim, and that's where the district court ruled based on FIREA that you were I think it should have been raised in a more specific way. It seems odd that if that's a key point of yours, the district court doesn't even mention it, and you don't raise it until your reply brief here. The argument, regardless of its label, was there. L&V's prior breach. We'll look at the papers. I'm sorry? We'll look at the papers. And I would also add that since it is a matter of Well, I don't know about that. Why do you say it can be raised at any time by whom? A court at any time can make a decision about subject matter jurisdiction. A court cannot assume jurisdiction when it lacks subject matter jurisdiction, but must a court assume jurisdiction if a Okay. Counsel, you're in your rebuttal time. You can continue if you like, or you can reserve. I'd prefer to reserve my time for rebuttal, and I thank the court for its time so far. Thank you, Mr. Hartman. Mr. Magnuson. Good morning. May it please the court, Eric Magnuson, on behalf of L&V, along with Robert Ackerman. L&V isn't hiding behind anything. When a bank fails, the FDIC is failed because it was insolvent. So those claims are never going to get paid a hundred cents on the dollar. That's just a fact of life. So what the FDIC does is it looks at the assets and it says, who's got claims against these, and how can we maximize recovery for anyone? FIREA says, well, you decide who has claims against the assets by having a claim procedure. And if somebody has a claim, it has to be submitted administratively or it is barred. This court has repeatedly said, failure to file an administrative claim bars that claim. It's gone. So on September 30, 2009, when my client purchased the interest from the FDIC, all the advances that Mr. Hartman says were uncertain or unpredictable, they'd been made. Everything had happened up to that point in time. The loan was fully funded and the extraordinary expenses up to that point had been submitted to the administrative process and his client chose not to. Well, you can't say, I'm not going to participate in FIREA because it doesn't work to my advantage. It's mandatory. And this court has said repeatedly, starting with the Buford case in 1993 and several others, if you don't file a claim, you're gone. How does that impact this case? My client came along and said, we will pay money. We're not getting out of this for nothing. We will pay money to acquire assets. Well, what assets are those? Well, it's a participation in the Lake Austin loan. The question is, well, what strings does that come with? And the answer from the FDIC is, nobody's filed a claim. So you will only take future liabilities. That's exactly what the loan sale agreement says. Is that language in our materials on appeal? It is, Your Honor. It is in the... Well, now you're talking about the issue where Judge Erickson said there's a disputed fact question. And you're wanting us to take your view of it. No, let me just say this. Whatever that language says, you can only assume that which exists. When the FDIC sells this asset on September 30, 2009, everything that it didn't fund before that, which is a certain number, it's the loan advances and its extraordinary expenses. Everybody knows what that is. It's not a future contingent event. It's done. That has to be submitted to a claim process. And under HEN02, which this Court has recognized, and the regulations under FIREA 3850, I believe it is. It's cited in our brief at page 18. The fact that the bar date has been at some earlier time doesn't prevent the filing of a claim if the events giving rise to the claim occur later. So as of September 30, 2009, when my client buys things, forget for a minute what the contract says. We can only assume that which exists. And as of that date, the claims for the FDIC's failure to fund prior to that date are administratively barred because they never submitted a claim. Even if we accept that, what about the fact that LNV is in breach? If the OSM is correct that you, under the contract, assumed the prior obligations, which Judge Erickson says is a that it's in breach by not paying draws, whatever, 23 through 44, and the extraordinary expenses. The 23 through 44 were not paid by the FDIC. Yeah, but if LNV assumed those in the contract. If LNV assumed any liabilities. If they assumed them in the contract, which is a disputed issue of fact, then why isn't LNV in breach? Because you can only assume that which exists. I think what you're saying is we have to resolve the issue that the district court said cannot be resolved. Absolutely not, Your Honor. I'll try one more time. Let me give it another shot. When the FDIC takes over a bank, it sets up a claims process. I'm sorry to interrupt, but I'm not talking about whether they had to file a claim. I'm talking about their affirmative defense that LNV is in breach. The only thing we could be in breach of is nonpayment of the liabilities we assumed. If there was no liability of the FDIC because there had been no claim filed, there's nothing for us to assume. Now, we don't think we assumed anything under the contract. In a sense, it doesn't make any difference. Not only is there the question of whether they even have standing to assert a claim under the Loan Sale Agreement because they're clearly not a named beneficiary. They claim to be a third-party beneficiary, but it's a government contract. There's a list of who the third-party beneficiaries are. It's only the FDIC Corporation. They're not there. The only way they get there is by going through the Loan Sale Agreement, but I want to focus right on this, Judge, because I'm not doing a very good job explaining it to you. If there are this many claims and the microphone is September 30, 2009, we agree. We take everything after that, but there are no claims prior to September 30, 2009 because they didn't submit an administrative claim. They're barred. This court, Buford, failure to exhaust the administrative remedy is a bar. Hansen, failure to exhaust a C... They're barred from making a claim. I understand that, but does that mean L&V is not in breach? No. Yes, it does. It means that there's nothing for us to have assumed. They can't assume something that doesn't exist. I guess the question is whether it doesn't exist because they failed to make a claim or whether it exists and they just can't recover affirmatively. Well, Your Honor, no court has jurisdiction to decide that issue because they didn't exhaust their administrative remedy, so in this lawsuit, it's gone. It can't be in front of the court. I thought the courts had said, we do have jurisdiction to address affirmative defenses. But it's not an affirmative defense. It is simply a set-off claim. You owe us this much money. We claim you owe us this much money. What's the net? That's how this was ultimately resolved, but to your point about . . . So it's not an affirmative defense? It's not an affirmative defense. Is there any difference in the treatment of what you felt you were entitled to or contractually entitled to receive based on loan payments versus the expenses and the costs? No. No, Your Honor. After September 30, 2009, there was $11,900,000 in extraordinary expense advanced under the loan. We agree. We owe 2.1% of that amount. That was the net that was taken. There's a $30 million sale. At 2%, we would have gotten $600,000. We ended up with $350,000 out of it because they netted out the post-September 30, 2009, extraordinary expenses. We agree we owe those, but we don't owe anything before that because there was nothing for us to assume. The claims were barred. They can't be in the lawsuit because OSM failed to present an administrative claim. It really is as simple as that. Did L&E breach the contract then by not paying those extraordinary expenses? Your Honor, there's a question as to which party breached first. They demanded that we pay 4%. We said we don't owe you 4%. They didn't show us all the documents. There's a dispute as to whether they complied with their obligations under the agreement to provide us that. But their claim here is, if you look at Restatement Section 237, Comment A, it says that a breach, even if there was one, merely suspends performance, and it only excuses performance if some circumstances arise that defeats the contract purpose. What Judge Erickson said, and I think it's correct, is under Restatement 237 and Restatement 242, when you can still achieve the goal of the contract, the suspended obligation, that's the best that you could say, or if we did breach, it suspended OSM's obligation to pay us, that suspension stops when you can net out and leave the parties in the proper spot. I'm very confident about that argument, Your Honor, if you look at the restatement and the comments. It's just money back and forth. To your point about affirmative defenses, Your Honor, they were not raised. They were not raised in the lower court in the sense that we're talking about. Well, I wondered about that. It is in the answer, but I couldn't find it in any of the briefing. Not in the briefing, and it's not in their opening brief. We did a word search of their opening brief for affirmative defense, and it's not there. And so the issue really is behind us. But look, really, their claim is simply a set-off. You owe us, they say, more than we owe you, and therefore they want us to pay millions, and we want them to pay hundreds of thousands of dollars. Your Honor, if FIREA doesn't work the way I have explained it to you, if you write an opinion that says that's not how it works, you will have what you said in Dittmer created a chilling effect on the whole process. The FDIC needs certainty when it sells these loans. What's your response to the Ninth Circuit Sharpe case that the appellant seems to rely on? Even the Ninth Circuit has walked away from Sharpe and Deutsche Bank and Batista. Sharpe was a very odd circumstance where an elderly couple had made a settlement agreement with the bank, and the bank was supposed to send them a wire transfer, and instead they sent them certified checks. And when they got the checks and tried to cash them, the FDIC had stepped in, and it wouldn't honor them. It is a complete outlier, and it is inconsistent with both this court's view of the law and the vast majority of circuits. They really don't have anything to do with it. Waterview Management, for example, the issue was, can the FDIC ignore a provision in a contract that gave basically the other side the right to consent to the transfer of an asset? The FDIC said, no, we're going to sell it anyway. We're going to ignore that. And what the specific holding is, is that the FDIC, that FIREA does not preempt state law, that consent was required, but it's a breach if you sell it without. If it's a breach, then you have an administrative claim. Everything the FDIC doesn't do that breaches a contract has to be submitted in an administrative claim, because if you don't have that process in place, then when the FDIC goes to market an asset, the buyer is going to say, well, what claims is it subject to? And the FDIC is going to say, I don't know. OSM brought this case and got the Eighth Circuit to say, it kind of depends on the circumstances. You don't really have to file an administrative claim, and so we can't tell you what obligations you're subject to. That's the whole point of the administrative process, certainty. In Dittmer, in your opinion in that case, you said there would be a chilling effect on the ability of the FDIC to maximize the assets if we don't require exhaustion. And that's really all this case comes down to. They make a lot of different arguments, but as the chronology in our brief lays out, before September 30, 2009, they knew exactly what was owed, they knew exactly what they claimed the FDIC should have paid, and they didn't submit an administrative claim. And if they had submitted the claim, they would have been in with a pool of creditors, right, and would have had to have been taken into account. So they might have gotten less back than if they do. Is that one incentive to not go through the claims process? Your Honor, there is no incentive to not go through the claims process. It is mandatory. There are reasons why people don't like the claims process, but remember, I started off by saying the bank failed. When the bank fails, people aren't going to get 100 cents on the dollar. And that's what the FDIC does. It gathers up assets, and it gets as much money for them as it can. My client's not skating here with a free ride. We paid for the assets we got. That money went into a pool. That pool is what the FDIC used to pay properly filed claims. OSM chose not to participate in that. You can't do that. You cannot say, I'm just not going to participate in the FIREA process because I don't think it's fair to me. It's mandatory. It's jurisdictional. And if they don't, then no court has jurisdiction to determine those claims that should have been submitted and were not. They're gone. They're barred. This court uses the term barred repeatedly in, let's see, Buford, Hanson, Dittmer, Tri-State. I mean, you have a whole list of cases where you have looked at this and you said, claim barred, claim barred, claim barred. If the claim is barred, then I know my client knows what assets it's buying. Then the administrative process works smoothly. Then there is certainty. There is expedition. That's the whole point of FIREA. I think, Your Honor, we've already touched on the third-party beneficiary rule. It's a second reason and one that, with respect to the district court, I think she got it wrong. They don't have standing to bring this claim as a matter of contract law. Now, I don't think you'd get there because FIREA answers all your questions. But if you think there's some question under FIREA, if you look at the loan sale agreement at Appendix, I believe it's 129, it lists who the beneficiaries are of the contract. It says the beneficiaries are the parties and their assigns. The third-party beneficiary is the FDIC in its corporate capacity, and no one else is listed. It's a government contract, and so there is an assumption that incidental beneficiaries are not third-party beneficiaries. If you're not a party or a third-party beneficiary, you've got no standing to enforce the contract. So there is a second completely valid and compelling reason to say no claim here. But I don't think you need to get to it because we'll live with the deal we made. We said, okay, what claims have been filed? And we cite a document that the FDIC gave us about what unfunded claims are out there. Zero, the FDIC said. The reason it said zero is nobody had filed an administrative claim. There were no claims to assign. And if there are no claims to assign, and we assume liability after September 30, 2009, the system works the way it's supposed to work. There is certainty, there is expedition, there is efficiency. But you would be going against the great weight of authority if you were to accept their position that, first of all, that it's only pre-receivership contracts that apply. We cite the six or eight circuits that have gone the other way. We also cite numerous cases, including cases from this circuit, that say it's a mandatory process, it's not optional. If you don't participate, your claim is barred. If your claim is barred, there's nothing to assign. I feel like I'm repeating myself, and you don't need me to do that. I have some time left. If you have questions, I'll answer them. But I believe I've spoken my piece. Thank you, Mr. Magnuson. Thank you very much. Mr. Hardman. Thank you again, Your Honors. The term claim is a term of art under FIREO, and there's no argument that a debt that exists prior to the receivership beginning is a claim within the meaning of FIREO. The question for this Court today is what happens where something that is used in a more general legal sense is a claim. A debt arises after the receivership begins, and there's a split of authority amongst the circuits. The Eighth Circuit has not ruled on this issue yet. We would urge the Eighth Circuit to rule consistent with what the Tenth Circuit did in Homeland Stores, and it would be for the reasons that we cited in our brief and I mentioned in my opening remarks. The prior cases rely on the first HINO case out of the First Circuit and not take into account the internal policy manual that allows for the claims to be filed after the bar date. I don't recall whether it relied or didn't rely on the HINO case out of the First Circuit or which of the two HINO cases that it relied on. Well, isn't the rationale superseded? I don't believe so, not under the facts of this case, because as I described in my opening comments, the claim was successive. It wasn't as if a single debt arose on some specific day after the receivership began. This was a successive series of debts. It was uncertain whether the underlying borrower would continue to make draw requests. It was uncertain whether the underlying borrower during the period of receivership would breach its contract. It wouldn't be entitled to any more advances of principle. And so that's why the Homeland Stores case is better applied to the facts of this case. That was the primary rationale was that at the time the receivership began, the claim was contingent and uncertain on a going-forward basis. The Buford case that counsel repeatedly cited is not helpful to this Court's decision here today because the Buford case was one related to discriminatory conduct that occurred prior to the receivership beginning. Like all other cases here in this circuit that have been decided under FIREA about claims, the conduct or the claim, the debt, however you want to describe it, in all the cases that this circuit has decided to date, the claim arose and had ripened into a claim before the receivership began. As for the contract interpretation argument that you discussed during Mr. Magnuson's presentation, you're right, Judge, there is an ambiguity in the loan sale agreement. The ambiguity arises from really an internal inconsistency between Section 2.1, in which it says that the buyer has agreed to assume all liabilities and obligations of any kind, and I'm paraphrasing, Your Honors, and a conflict between that and Addendum D, which says that buyer agrees to assume all obligations arising on or after the date hereof, including without limitation, all obligations to make incremental disbursements of loan proceeds. I think what opposing counsel is saying, though, is once you didn't file, once your client failed to file a claim, it's done. There was nothing to whatever that may have been. It no longer exists as a matter of law, I suppose. Counsel's argument requires you to assume that as a result of the decision, failure, however you want to label it, not to file a, quote, claim with the receiver that a portion of this participation agreement or participation interest, the $3 million unfunded commitment, just vanished. It went nowhere, and that's inconsistent with the language of the participation agreement itself, specifically Section 4.5. Even where the lead lender exercises its ability to self-help and take back the interest from the participant, it doesn't relieve the participant of its obligations under that agreement, and that's where Section 5.2 of the loan sale agreement between the FDIC and L&V becomes important. It says that the buyer, L&V, agrees to perform in accordance with the obligations and agreements that the failed bank had signed. The performance obligation was ongoing on the part of this participant, and having failed to perform, the participant is entitled to nothing. Thank you, Mr. Harpin. Thank you, Your Honors. Court wishes to thank both counsel for your presence and argument to the Court this morning. The briefing which you submitted, we will take your case under advisement, render decision in due course. Thank you. Thank you, Your Honor.